[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION INTRODUCTION
INTRODUCTION
This case was tried to the court.
The complaint, as amended, alleges that the named defendant (the "defendant") operated a marina on property which it leased from the other two defendants (the "Premises") and that the plaintiff, a customer of the defendant's, suffered personal injuries when he fell while using a defective ladder which the defendant allowed to remain on the Premises for use by its customers.
The essence of the plaintiff's claim is that the defendant had a duty to its customers not to allow defective ladders to be left on the Premises so as to be available for use by its customers.
FACTS
The following facts are found:
As a service to customers, and for a fee, a marina operator will haul a customer's boat out of the water and secure it on the marina's premises so that it can be serviced or maintained;
In order to get inside a boat which is secured on land, and in order to reach some parts of the exterior of such a boat, a ladder is required;
Some boaters have their own ladders, and some boaters do not; CT Page 1795
It is a custom or convention for some, but not all, boaters who have ladders to leave those ladders on the ground at marinas, and it is understood by those ladder owners and by other boaters that those ladders may be used by people other than their owners;
Some ladders left on the, ground at marinas by boaters have been abandoned by their owners;
Some ladders left on the ground at marinas by boaters are defective and dangerous;
All boaters with any significant boating experience who service or repair their boats while they are secured on marina premises have knowledge of each of the facts found above;
On August 23, 1993, the plaintiff owned and operated as a charter boat a 31-foot sport fishing boat (the "Boat");
On August 23, 1993, the rudder of the Boat was damaged, and on that day the plaintiff had the defendant haul the Boat out of the water and secure it on blocks on the Premises so that the plaintiff could repair its rudder;
After the Boat had been secured, the plaintiff found a ladder (the "Ladder") which was present on the Premises but which was not owned by the defendant;
The plaintiff climbed into and out of the Boat on the Ladder on several occasions without a problem;
The last time the plaintiff attempted to climb down the Ladder from the Boat, the second rung of the Ladder gave way, the plaintiff slipped, the Ladder slid and the plaintiff fell, suffering injuries to his head and the entire left side of his body;
Before the plaintiff fell on the Ladder, Ronald Safranski, who was called as a witness by the plaintiff, used the Ladder;
Before using the Ladder, both the plaintiff and Ronald Safranski looked the Ladder over and saw nothing wrong with it; CT Page 1796
On August 23, 1993, the plaintiff weighed 210 pounds, or a little less;
Boat owners who repair their boats out of the water at marinas know that, because some of the ladders lying on the ground at marinas are defective, one who intends to use such a ladder should inspect it for safety before using it;
On August 23, 1993, the plaintiff was approximately 40 years old, had a bachelor's and a master's degree, had been engaged in boating approximately 20 years, was licensed by the United States Coast Guard as a boat captain and had operated a charter fishing boat during summers since 1988.
DISCUSSION
The essence of the plaintiff's claim is that the defendant owed a duty to its customers, including the plaintiff, to inspect all ladders left on the Premises in order to discover all obvious and latent defects. Such a proposition would make a marina operator, de facto, a guarantor of the safety of all ladders left on its premises.
While the claim advanced by the plaintiff might have appeal to a legislature when drafting, on a clean state, a code of conduct for marina operators, this case must be decided on the basis of common law negligence concepts. In that context, the issue is whether, in 1993, reasonably prudent marina operators inspected all ladders on their premises for obvious and latent defects and, concomitantly, whether boaters expected marina operators to do so. From the facts found in this case, each of those questions must be and is answered in the negative.
The plaintiff claims that, even if his theory of a marine operator as a de facto guarantor of the safety of ladders left on its premises is rejected, nonetheless, a marina operator has the somewhat less onerous duty of making a "reasonable inspection which would . . . disclose(d) a dangerous condition." (Plaintiff's Brief, citing Warren v. Stancliff,157 Conn. 216, 219 (1968). While the court finds this a more appealing and perhaps more accurate statement of the law, its adoption by the court would be of no help to the plaintiff, because both the plaintiff and Ronald Safranski conducted an examination of the Ladder before using it, and each used it CT Page 1797 without incident. Accordingly, the court concludes that a reasonable inspection by the defendant would not have been any more successful in discovering the dangerous condition which existed in the Ladder (if any did exist) than were the examinations and use of the Ladder by the plaintiff and Ronald Safranski.
CONCLUSION
Because the defendant did not breach any duty owed to the plaintiff, the issues on the complaint are found for the defendants, and judgment is entered on the complaint for the defendants.
The issues on the complaint having been found for the defendants, the counterclaim has become moot.
Levine, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 1804